NELSON v. JENKINS.

1. APPELLATE PRACTICE—EXCEPTIONS.
An exception to the final judgment, saved by bill of exceptions, is, in all cases where the trial was to the court, essential to give this court a right to disturb the judgment because of its being unsupported by the testimony.

2. SAME—JURISDICTION.
A trial judge is without power to authenticate a bill of exceptions after expiration of the term, unless authorized so to do by order of court made during the term. The defect in a bill not so authenticated cannot be cured by a *nunc pro tunc* order, based, not upon evidence that the order had been made, but upon the inadvertence of the parties to procure signatures to the bills or an extension of time within which they might be presented.

*Error to the District Court of Conejos County.*

. Mr. Z. T. BROWN and Mr. F. B. WEBSTER, for plaintiff in error.

Mr. R. K. BROWN, and Mr. W. M. MAGUIRE and Mr. HENRY C. CHARPIOT, of counsel, for defendant in error.

BISSELL, J., delivered the opinion of the court.

The judgment complained of was entered in the course of the administration of the estate of an insolvent, who had

made a general assignment under the statute for the benefit of creditors.   John Corlett was a merchant, doing business in Antonito, and carried a stock of furniture, queensware, wall paper, etc., and has been carrying on that business prior to 1893, and up to the time when he made the assignment. Being indebted to the petitioner, Nelson, he made, on January 4, 1893, two notes,—one for $624, due six months after date, and the other for $1.00, due two years after date,—and concurrently with the execution and delivery of the notes gave a mortgage. to Nelson to secure their payment, which covered the stock of goods in Corlett's business house on certain described property, and also whatever was in the building, or that might be bought and placed therein for the replenishment of the stock.   On that date, and as a part of the transaction, the parties made an agreement, which Nelson signed, whereby he agreed that Corlett should continue in possession and sell the goods covered by the mortgage in the usual course of trade, for cash or on time, subject only to the condition that 75 per cent of whatever should be received from the sales should be turned over to Nelson.   The remaining 25 per cent was to be kept by Corlett, and used for the expenses and management of the business.   Afterwards, and in June, 1893, Corlett made a general assignment to Jenkins, who accepted the trust, gave his bond, took possession, and proceeded to wind up the estate.   He gave notice to all creditors, and Nelson filed his claim in the district court, which had jurisdiction of the matter, and took the usual course of creditors in such cases.

In July, Nelson filed a petition in the court, setting up the existence of the mortgage and the debt, alleged the nonpayment of the notes, and asked an order directing the assignee to turn over sufficient of the goods described in the mortgage to pay or satisfy it, and asked alternative relief to be granted in case the assignee was selling the goods, to require him to pay 75 per cent of what money he might receive from the sale of the goods until the mortgage was satisfied, or, if enough had been received, to pay the amount of the debt,

and that the assignee be directed to recognize the mortgage and debt as a first lien, and satisfy it before any expenses were paid or dividends declared to the creditors generally.

Various proceedings were had subsequent to the filing of the petition, but they culminated in an answer which admitted the giving of the mortgage and the execution of the notes, set up the filing of the claim in the court, and then asserted the invalidity of the incumbrance as against creditors, because the mortgage was on a stock of merchandise, and gave the mortgagor possession, with the power of sale, and the right to appropriate a definite percentage of the results.

Motions to strike parts of the answer and a demurrer to it were disposed of, and the case was finally set for hearing, and tried to the court without a jury. Antecedent to the trial, the assignee filed a report in court, as was required by the statute, which stated the amount of the stock received, the sales made, and the disposition made of the proceeds. The report was attacked by the petitioner, its sufficiency, accuracy and legality were questioned, and apparently much testimony introduced respecting the action which the assignee had taken in the management of the affairs. On the hearing on this petition, the court, in June, 1894, entered a judgment which substantially found the petitioner's claim valid, that it should be preferred to the claims of all other creditors, and should be first paid out of any moneys arising from the sale of goods, and passed on the account, determined the validity of some of the charges with which the assignee had credited himself, disallowed others, and directed the payment of the petitioner's claim. To this judgment there was no exception taken by the petitioner, who is the plaintiff in error. Further proceedings under the petition were had in November, 1894, on a subsequent report filed by the assignee, and likewise in January, 1895, when his final report was filed, and an order was made discharging him.

It will be seen from this brief narration that the only judgment which settled and fixed the rights of the assignee and

petitioner, respectively, was entered in June, 1894, declared him entitled to be first paid out of the estate, and his claim to be preferred to that of all other creditors, which the petitioner accepted as a final adjudication of his rights. The two subsequent orders which the court made were based on the reports which the assignee filed, showing his doings in the premises, and extended only to the allowance and disallowance of claims for disbursements and expenses, and related solely to the assignee's management and disposition of the assets. This consideration disposes of the only difficulty which the case might have presented. The assignee attempted by his answer to raise an issue respecting the validity of the petitioner's incumbrance, and to insist that, because the mortgage was invalid as against creditors, it was equally invalid as against him, and he had a right to insist on this defense, and resist the payment of the claim. The question is suggested in the briefs of counsel, and it is contended by the respective parties, on the one hand, that such defense is not open to the assignee, who is not at liberty to assert the invalidity of the security because the incumbrancer would be debarred this right, and, on the other hand, that this contention can be made because of the trust relation which the assignee occupies with reference to the creditors, and his right to insist on any matters of defense, growing out of or based on the security, which would be open to the creditors themselves. If we were called on to decide the question, we might be compelled to admit the assignee occupied no other or different relation to the security than that occupied by the mortgagor, and if the security was valid as to him, it was valid as against the assignee. We do not, however, regard this question as before us, nor do we attempt to declare what the law would be either in this or under any other circumstances. The assignee does not complain of the finding, nor did the petitioner take any exception to the judgment which the court entered, whereby his rights were fixed and determined, but he is here simply complaining of the subsequent orders of the court approving the reports of the assignee, and of

what he did in winding up the estate. The petitioner accepted the court's conclusion, rested satisfied on the judgment that his was a preferred claim, which should be first paid out of the assets, and neither petitioned the court for leave to sue the assignee, in replevin or otherwise, nor did he make any distinct and specific application after the judgment that the funds should be turned over, nor proceed against the assignee to compel him to execute the order of the court. He waited for the winding up of the estate, and, on the incoming of the report, contested it, on the ground that goods were sold and moneys received which had not been properly accounted for. His objection to the report charged the grossest mismanagement on the part of Jenkins, misappropriation of the funds, and a failure to comply with the court's orders in the premises.

If the case was presented to us in such shape that we could review it, it is quite possible we might agree with the petitioner, and hold that he was entitled to relief and an order of the court directing the assignee to pay over the money which he had received, subject to no deductions except such as were absolutely incidental to the immediate public sale of the goods, and the transfer of the moneys to the creditor who was by the judgment of the court entitled to the preference. We are wholly unable, however, to ascertain whether the court proceeded properly, and whether what were allowed as expenses were or were not legitimate, as between the petitioning mortgage creditor, the assignee, and the creditors. The whole matter was heard on testimony which is not before this court.

There are two considerations which absolutely prevent us from deciding these matters. In the first place, there is no exception to the judgment saved in the bill of exceptions, which is essential in all cases when the trial is to the court, to give us the right to disturb the judgment because it is unsupported by the testimony. This has been repeatedly adjudged, and the question so often determined in both the appellate courts of the state that a citation of authorities is

wholly unnecessary. In the next place, there are no bills of exception in the record. There are what purport to be bills of exception containing the evidence received on the several hearings, but they were neither signed nor sealed by the court at the term it was taken, nor within any time fixed by the court for their preparation and allowance. A preliminary motion was filed in this court to strike them from the files. The motion was not disposed of, but the parties were allowed to present it on final hearing.

Subsequent to the filing of the records and the submission of the case, the parties asked and obtained leave to withdraw the bills for the purposes of correction, and have attempted to supply these defects by amendments signed by the court with its seal affixed. These amendments cannot be considered, because there was no showing made to the lower court on which the court could rightfully make an order *nunc pro tunc;* the whole thing being rested practically on what the motions call the "inadvertence" of the parties to procure signatures to the bills, or an extension of time within which they might be presented. The signature was affixed long after the term without authority, and they may not be taken to evidence their proper allowance and settlement. Since this is true, the only question presented by the record which we have a right to consider is as to the rightfulness of the judgment originally entered, declaring the petitioner a preferred creditor, and entitled to be first paid, before any dividends should be paid to other creditors or any other disposition made of the proceeds. The judgment, as originally entered, secured to the petitioner his full rights if it had been properly carried out. He does not complain of the judgment. The rights of the parties were as fully and adequately determined by that judgment as they would have been by any other, and, since the plaintiff in error was unharmed by it, he is in no situation to complain of the entry.

Since nothing else is open to review, and no prejudicial error was committed, we are unable to disturb the judgment; and, though we may be of the opinion he was harmed by

what the court did subsequently with reference to the disposition of the estate, the matter is not so presented that we can afford him any relief. There being no errors apparent in the record which we are authorized to review, we are compelled to affirm the judgment.

*Affirmed.*